## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| )  | |
| Plaintiff,   ) | |
| )   | No. 5:21-mj-05392-MAS-1 |
| v.   ) | |
| )  | |
| ANTUAN LAMONT JACKSON, JR.,   ) | |
| )  | |
| Defendant.   ) | |
| )  | |

### DETENTION OPINION & ORDER

The Complaint alleges that Defendant Antuan Lamont Jackson, Jr. ("Jackson") possessed with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841. [DE 1]. At Jackson's initial appearance, the United States orally moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C). [DE 4].

On December 27, 2021, the Court held a combined preliminary and detention hearing; after finding probable cause to believe that Defendant committed the alleged offense, the Court proceeded with an evidentiary hearing on the detention issue and afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). [DE 5]. The Court heard testimony from Drug Enforcement Agency ("DEA") Task Force Officer Baker ("TFO Baker"), Defendant's father, Antuan Jackson, Sr. ("Jackson, Sr."), Defendant's business partner and friend, Raymond Richard ("Richard"), Defendant's mother, Cheryl Warner ("Warner"), and Defendant's girlfriend, Brittany Daniel ("Daniel"). [DE 7]. The Court further admitted into the record, under seal, the Pretrial Services Report ("PSR"), prepared by the United States Probation

1

Office ("USPO").  [DE 6].  The United States argued that Defendant should be detained based on nonappearance and danger risks, with its primary focus on the latter.

Despite a few minor nonappearance concerns on this record, the defense has proposed adequate conditions to fully mitigate them and to reasonably assure that Jackson would continue to appear for proceedings in this matter.  However, and though it is a particularly close call, the Court does not find that such conditions are sufficient to reasonably assure community safety. Accordingly, per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this Opinion, the Court finds that detention is warranted based upon danger risk.

## I.      BRA FRAMEWORK

Given the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk.  18 U.S.C. § 3142(e)(3)(A).  The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry.  The presumption imposes on Corrales a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk.  *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Stone*, 608 F.3d at 945.  An unrebutted presumption requires detention.  A rebutted presumption remains a pro-detention statutory factor.  *See id.* ("The presumption

remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably assure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately mitigate danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as a critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given the hearing's informality, the Court properly considers a wide range of proof. The nature and quality of proof impact its probative value and ultimate weight in the detention calculus.

3

## II.     ANALYSIS

The § 3142(g) factors drive the overall analysis.  As a threshold matter and for the reasons discussed below, Jackson has produced sufficient evidence to rebut the presumption as to both flight and danger.  The United States has not shown by a preponderance of the available evidence that Jackson is a nonappearance and/or flight risk, but it has offered clear and convincing evidence of Jackson's potential danger to the community.  The BRA thus requires Jackson's detention.

### a.     RISK OF NONAPPEARANCE

Jackson rebutted the presumption of detention as to flight with credible, probative testimony from his family members and business partner about Jackson's prospective employment opportunities and his wide network of support in the Lexington, Kentucky area. Jackson's friend and business partner, Richard, testified that their landscaping company had scheduled upcoming, consistent work with a new housing development.  [Hearing Recording at 41:10].  Jackson's girlfriend and parents testified to their willingness to assist in Jackson's compliance with any release terms.  Specifically, Jackson's father testified to the family's (and Jackson's) deep entrenchment in and connection to the local community.  [*Id.* at 20:45].  And, importantly, Jackson made all related state appearances as required, including appearing in court on the date of his subsequent federal arrest in this case.  [*Id.* at 15:30 (testimony of TFO Baker)].

This evidence and testimony firmly satisfy Jackson's production burden.  *Stone*, 608 F.3d at 945; 18 U.S.C. 3142(g)(3)(A) (directing consideration of, among other things, the defendant's family ties, length of residence in the community, community ties, past conduct, and record concerning appearance at court proceedings).  In response, the United States must prove by a

preponderance that Jackson presents a risk of nonappearance and that no conditions can address

such risk.  Given the balance of BRA factors and the availability of conditions as discussed

below, the Court finds that detention based on nonappearance risk is unwarranted.

### 1.        Nature and Circumstances of the Offense

The Court first considers the nature and circumstances of the charged offense, including

whether they involve a controlled substance or a firearm.  18 U.S.C. § 3142(g)(1).  The charged

offense in this case, involving an aggravated quantity of fentanyl, somewhat favors detention,

given the rebutted but persisting presumption stemming from it.  *See* 18 U.S.C. § 3142(f)(1)(C).

However, there are no other circumstantial flight or nonappearance[1] indicators surrounding the

offense allegations.  This factor thus carries little weight in the ultimate nonappearance analysis

and is neutral.

### 2.        Weight of the Flight Evidence

The second BRA factor looks to the weight of the evidence that Defendant poses a flight

risk.  18 U.S.C. § 3142(g)(2).  *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d

1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th

Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the

evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F.

Supp. 3d 779, 785 (E.D. Mich. 2020).

There is relatively little evidence that Defendant poses a risk of flight or nonappearance.

The primary concerns are Jackson's 2008 and 2009 convictions for fleeing or evading the police

---

[1] This case presents no real risk of international or even interstate flight; the Court thus
addresses the risk of nonappearance or other evasion of prosecution.

on foot.  [PSR at 4].  However, Jackson lacks any more recent failures to appear or flight-related convictions.  And he has no other criminal history.  Moreover, importantly, TFO Baker confirmed that Jackson was cooperative at the time of the traffic stop and during the search warrant execution, and he appeared for state proceedings in the case after posting bond— including on the date of his federal arrest.  [Hearing Recording at 12:40-16:00].  These facts demonstrate that Jackson's 2008 and 2009 convictions (at ages 18 and 19) are not substantially probative of his current appearance likelihood.

Beyond the dated fleeing convictions, the only evidence of nonappearance risk is substance use, to some degree, and a prior lengthy period of unemployment.  As to substance use, Jackson conceded that he uses fentanyl approximately twice a month when he experiences pain (lingering from a 2012 motorcycle accident), and other drugs with less frequency.  [PSR at 3-4].  He reports that he began using fentanyl approximately one year after the accident, in 2013, after developing an addiction to the prescription pain pills.  However, the PSR also reflects that Defendant participated in a year-long outpatient treatment program in connection with his conviction in 2009 (at age 19) for possession of an unspecified drug.  It is unclear what the purpose or nature of that treatment was, and the current contours of Jackson's substance use disorder are unknown.  However, to the extent this bears on nonappearance risk, the Court believes that it can craft appropriately responsive conditions as discussed *infra*.  Further, as it relates to Jackson's prior unemployment, the credible testimony about his company's work and contracts going forward cures much of the concern.

Accordingly, despite some minimally probative evidence indicating nonappearance risk, there is certainly not weighty evidence that Defendant is not likely to appear for proceedings in this case.  This factor thus weighs only very slightly, if at all, in favor of detention.

### 3.      Defendant's History and Characteristics

The third and final BRA flight factor evaluates Green's history and characteristics.  18 U.S.C. § 3142(g)(3).[2]  Weighing against Jackson specifically as to potential nonappearance risk are Jackson's amorphous substance use issues, his dated fleeing convictions, and his roughly seven-year period of unemployment.  However, Jackson's wide network of family support and ties (with the birth of his child looming), his business and the credible evidence of its consistent work to come, and his lack of any criminal history or appearance issues in the last decade weigh in his favor.  Overall, and given the strength of family support presented at the detention hearing and its proposed role in assuring Jackson's appearance and compliance with conditions, this factor weighs in favor of release.

As discussed, Jackson has admitted to using fentanyl for pain control approximately two times a month; however, the timeline and full extent of his use is not entirely clear or consistent on this record.  In any event, it does not seem to be so pervasive an issue that it would meaningfully impact Jackson's inclination or ability to appear for court, particularly in light of the proposed family assistance in assuring his appearance.  Additionally, Jackson's more recent actions and cooperation during arrest and state appearances for the instant offense are more probative than the aged fleeing convictions, and the former facts weigh heavily in Jackson's

---

[2] The fourth BRA factor, the nature and seriousness of any danger, does not bear on nonappearance risk.  *See* 18 U.S.C. § 3142(g)(4).

favor and indicate that he will appear as directed.  And, finally, despite Jackson's concerning unexplained lack of employment between approximately 2013-14 and 2021, the Court is encouraged by Jackson's landscaping company's anticipated upcoming work and its legitimate growth over the last eight months.  Richard testified that Jackson has worked consistent hours advancing the company, which has profited and reinvested in itself to build inventory and expand into different industries since its inception.  [Hearing Recording at 38:45].  Further, Richard confirmed that the company has work lined up in both landscaping for a new housing development and possible snow removal work that will occupy Jackson over the winter season. [*Id.* at 41:10].

Lastly, in addition to Jackson's legitimate, constructive employment, the Court weighs in Jackson's favor his family's and Daniel's persisting support and willingness to assist in enforcing release conditions, even if consequences for Jackson would result.  The Court appreciated hearing the testimony from Jackson, Sr., Warner, and Daniel, who each presented as reliable and credible.  The Court is confident that each would play a crucial role in supporting Jackson on release and ensuring his consistent appearance at hearings and other court-related meetings.  Further, the impending birth of Jackson's first child further anchors him to the area and would incentivize compliance.  Family ties and support are express BRA considerations under § 3142(g)(3)(A), and Defendant's strong ties and support network reflect positively on him and favor release.

On balance, Jackson's history and characteristics do not indicate that he is a flight or nonappearance risk, and this factor thus does not weigh in favor of detention on those bases.

8

### 4.      Availability of Flight Conditions

Upon analysis of the relevant flight factors, there is little overall nonappearance concern as to Jackson.  And, for the concerns that exist, the Court can craft effective conditions to target each issue and ultimately reasonably assure that Jackson will appear as directed for proceedings in this case.  First, to the extent Jackson's prior employment gap signals idle time (and the possible problems that correspond with it), the Court is fairly assured by Richard's testimony that Jackson will have steady work through his landscaping business in the foreseeable future.  Moreover, the Court would intend to craft a condition requiring Jackson's engagement in company-related work and could potentially entrust Richard with oversight of Jackson during projects.  Second, as it relates to Jackson's substance use, the Court is confident that it could impose drug testing requirements and supervision by family members at home to ensure that Jackson would not continue using fentanyl.  These available conditions assuage the Court's stated nonappearance concerns in these regards.

Finally, the Court finds that Jackson's proposed residence with his girlfriend, Daniel, with additional monitoring by (and potentially transportation assistance from) his father and his aunt during the periods when Daniel is away at work would adequately assure his appearance.  Though his prior residence—the location of the state search warrant execution, where significant drug trafficking evidence was found, as discussed below in relation to danger—is clearly volatile and unsuitable for pretrial release, the proposed living situation with Daniel appears stable and reliable.  Daniel, a nurse practitioner at the University of Kentucky Hospital, testified before the Court and persuasively outlined her intent and ability to monitor Jackson most of the time.  [Hearing Recording at 1:00:10].  And, Jackson's father and mother both confirmed that Jackson's father and Jackson's maternal aunt could feasibly and would gladly assist in

9

transportation and monitoring as needed.  These credible family assurances, together with the possibility of home detention or curfews, etc., and locational monitoring, give the Court adequate comfort as to Defendant's future appearance.

For these reasons, the Court finds that the United States has not shown by a preponderance of the evidence that no conditions can reasonably assure Jackson's appearance at future proceedings in this case.  Detention based upon flight and/or nonappearance is thus unwarranted.

### b. RISK OF DANGER

The primary danger in this case is the risk of continued drug trafficking (and surrounding firearm possession) conduct.  *See Stone*, 608 F.3d at 947 n.6 ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").  As noted, given the controlled substance charge, a rebuttable presumption arises that no combination of conditions can reasonably assure community safety.  Based upon the evidence presented at the detention hearing and the facts reflected in the PSR, the Court finds that Defendant has produced sufficient evidence to rebut the presumption as to danger.

The PSR confirms that Jackson has no recent criminal history (within the last decade or so), that he has no prior violations of conditional release, and that he is employed with his own landscaping company.  [PSR at 2-6].  Testimony from the detention hearing demonstrated that upcoming work is available for Jackson with his company, and it further established that Jackson

10

has strong family and community support and a network of people willing to monitor him on release.  [Hearing Recording at 20:45 (Jackson, Sr.); 38:45 (Richard); 50:38 (Warner); 1:00:10 (Daniel)].  All of these facts provide at least some credible, probative evidence that Jackson would not endanger others or the community if released under conditions.  However, for the reasons discussed below, the Court finds that the BRA factors weigh in favor of finding that Defendant poses a risk of danger to the community and concludes, by clear and convincing evidence, that conditions cannot assure community safety.

### 1.      Nature and Circumstances of the Offense

The first factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance[.]"  18 U.S.C. § 3142(g)(1).  The BRA reflects Congressional belief in the exceptional dangerousness of controlled substance offenses.  The resulting danger presumption, though rebutted, remains a relevant consideration in weighing the factors.

The allegations in this case involve a significant quantity of fentanyl, a particularly dangerous and deadly substance.  On December 14, 2021, DEA and Lexington Police Department ("LPD") officers conducted surveillance on Jackson's townhouse in preparation for execution of a search warrant there.  [DE 1-1; Hearing Recording at 01:32 (testimony of TFO Baker)].  Officers trailed Jackson to a parking lot, conducted a traffic stop, detained Jackson, searched his vehicle consensually, and ultimately located three individually wrapped bags of fentanyl on Jackson's person and a loaded firearm in the center console of the vehicle.  [*Id.* at 03:20; 09:20; 11:20].  At Jackson's townhouse, during search warrant execution, officers found approximately 120 gross grams of suspected fentanyl (substantiated by field testing and other

comparative analysis as described in DE 1-1), digital scales, large and small powder drug presses, a large quantity of baggies, and approximately $50,000 in cash and a money counter. Law enforcement also recovered three additional firearms and ammunition throughout the home. The Affidavit and PSR confirm that Jackson was the sole occupant and lessee of the townhouse.

       The amount and type of substance in this case, and the fact that the evidence and allegations involve trafficking rather than possession, all weigh in favor of detention.  The quantity of fentanyl located during the search warrant execution and the individually packaged amounts found on Defendant's person indicate a relatively mid-level operation, with sales of user quantites.  Still, the 120-gram quantity located at one time at Defendant's property, where he resided alone, is concerning.  Additionally, Defendant advised officers of historical trafficking conduct, comprising 2 years of trips between Dayton and Lexington to exchange 3-4 ounces of fentanyl per transaction, with transactions occurring every few weeks.  [Hearing Recording at 06:00].  The aggregate volume of fentanyl handled personally by Jackson during the relevant scheme, per the record, is thus an aggravating danger factor.  Further, the presence of loaded firearms and ammunition found near Jackson at the time of his arrest and at his home, where the drugs and trafficking paraphernalia were located, heightens the danger risk associated with the offense.  *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation only increases that danger").

       The first BRA factor thus weighs in favor of detention.

**2.      Weight of the Danger Evidence**

The Court next considers the weight of the evidence that Jackson is a danger to others or to the community.  "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt."  *Stone*, 608 F.3d at 948.  The salient danger considerations are the scale and nature of the trafficking operation uncovered at Defendant's residence and his control over the enterprise, the firearms and ammunition found near Defendant and at his residence that appear associated with the trafficking conduct, and Defendant's admission of historical trafficking between Dayton and Lexington.

First, as noted, the amount of fentanyl and the extent of trafficking paraphernalia (including two drug presses, a cutting agent to mix with the fentanyl, and a money counter, among other tools) found at one time and directly linked to Jackson alone is aggravating.  The degree of Jackson's personal involvement (and the involvement of his residence) in all parts of the alleged scheme—the obtaining, repackaging, and reselling of fentanyl in an interstate distribution chain—suggests that he is not merely an isolated courier or minor player.  TFO's Baker's testimony, consistent with and expanding on the allegations in the Affidavit, demonstrated that Jackson has been entrenched in fentanyl distribution for multiple years.  The evidence demonstrates that Jackson managed his own operation, coordinating his own sales and customer base.  Given the $50,000 cash recovered at his property and the money counter, it appears that Jackson had personally cultivated a substantial, relatively large-scale fentanyl processing operation by the time of the search warrant execution in this case.

This evidence weighs heavily in favor of detention, as more sophisticated and larger-scale drug trafficking schemes pose the greatest risk for continuing distribution activity.  *See*

*United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme"); *United States v. Proctor*, 21 F. Supp. 3d 12, 14 (D.D.C. 2013) (finding that "the nature and circumstances of the offense favor continued [pretrial] detention" where there was evidence "that [the defendant] participated in a large-scale narcotics conspiracy"); *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged participation in a conspiracy to distribute "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).

Additionally, the detention hearing testimony indicates that the guns found during the searches in this case were likely tied to the trafficking operation.  Jackson's friends and family members were unaware that he owned or carried firearms, suggesting that he is not otherwise a gun hobbyist.  The fact that Jackson nonetheless had four firearms and ammunition, with one loaded in his vehicle during a trip to exchange narcotics, demonstrates that any firearm ownership and possession was likely tied to the alleged controlled substance offenses.  All of this further illustrates the scale and extent of Jackson's operation and, as a foundational matter, increases the volatility of the situation and exacerbates the danger risk.  Overall, together with Defendant's admission of prior interstate trafficking history, the circumstances reflect Defendant's deep involvement in armed, aggravated-quantity fentanyl distribution and indicate considerable danger.

14

Finally, the Court observes that Defendant's relative lack of criminal history, beyond the two dated theft and drug possession convictions, is mitigating to some extent and balances against the otherwise weighty evidence of dangerousness as described above.  However, the somewhat murky substance use history is not encouraging and makes crafting appropriate conditions more difficult.  At a minimum, Defendant's recent regular fentanyl use (for whatever purpose) increases the danger risk attached to the trafficking and firearm possession conduct.  In any event, the driving danger concerns remain Jackson's offense circumstances, historical trafficking activity, and firearm/ammunition possession.

For the reasons discussed, on balance, there is substantial evidence of Jackson's dangerousness.  The Court finds that the second factor ultimately weighs in favor of detention.

### 3.        Defendant's History and Characteristics

The Court next assesses Jackson's history and characteristics, to include his past conduct and character, family and community support, substance use disorder history, and criminal history.  18 U.S.C. § 3142(g)(3)(A).  The sole aggravating considerations are Defendant's 2008 and 2009 convictions and his admitted use of fentanyl, cocaine, and marijuana.  The age of the two convictions, coupled with the lack of more recent criminal history, indicates that they are of minimal value in predicting future danger or release compliance.  The substance use certainly indicates some danger risk, particularly given its overlap with the instant controlled substance trafficking charge.

However, the information presented at the detention hearing about Defendant's work ethic and character, family support, and positive relationships outweighs the aggravating substance use concerns and tips the balance of this factor in favor of release.  Defendant's

15

business partner testified about Jackson's commitment to the business, his hours worked, and the partners' efforts legitimate efforts to expand.  Jackson's parents described their close, cherished relationships with their son, and their continuing support and willingness to assist him on release reflects positively on Jackson.  The anticipated birth of Jackson's first child in January further would motivate compliance and occupy Jackson's time if released.  Finally, Daniel credibly testified about her stable relationship with Jackson and her willingness to assist during his release term.  The testimony demonstrates Defendant's positive relationships and character and tends to indicate that he is not dangerous.  His lack of criminal trouble since 2009, as well as the absence of any prior violations of conditional release, further mitigate danger risk and weigh in Jackson's favor.

Collectively, the relevant § 3142(g)(3) considerations thus weigh in favor of release.

### 4.    Nature and Seriousness of the Danger

Finally, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C § 3142(g)(4).  The Court finds that this factor weighs in favor of detention, largely based on the facts already discussed in relation to the first and second factors.

First, the risk of continued fentanyl trafficking, in particular, is grave given the deadly nature of the substance, even in small quantities.  *See, e.g.*, *United States v. Brown*, No. 1:20-CR-27-4 (KBJ), 2021 WL 1736870, at *10 (D.D.C. May 3, 2021) (surveying data on the dangers of fentanyl and weighing the fourth BRA factor in favor of detention).  It poses even greater risk of harm to other individual users and to the community at large when paired with a developed supply and distribution network as exists here.  And, as noted, the addition of firearms and

ammunition into the equation amplifies the seriousness of any potential harmful consequences. *See United States v. McCollum*, No. 3:21-CR-35-TAV-DCP, 2021 WL 5178487, at *7 (E.D. Tenn. Sept. 3, 2021), *report and recommendation adopted*, No. 3:21-CR-35-TAV-DCP-2, 2021 WL 4468937 (E.D. Tenn. Sept. 29, 2021) (finding that pretrial detention was appropriate on danger grounds where "the record contain[ed] evidence that the alleged [fentanyl] trafficking was conducted in a dangerous manner as a firearm was found in the vehicle during the traffic stop"). As discussed at length, drug trafficking is inherently dangerous and frequently requires detention under the BRA, even in cases without firearm involvement or aggravated quantities. Further, importantly, Defendant's historical involvement in regular drug trading over the past two years significantly amplifies the danger risk.

Together, these facts establish the seriousness of the danger that would result if Defendant were released and able to resume his drug conduct, and they tilt the fourth and final factor in favor of detention based upon danger risk.

### 5.   Availability of Danger Conditions

Upon consideration of the available conditions, the Court does not find that they are sufficient to reasonably assure the safety of others and of the community. Even strict location conditions, such as home detention and/or GPS monitoring, are frequently insufficient to reasonably ensure cessation of criminal activity when it arises in the context of a relatively advanced drug trafficking operation. *See United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate

in the charged drug distribution scheme from his home).  In this case, Defendant's years of trafficking involvement and connections surely would allow him to participate even remotely.

Nor is the availability of Defendant's family members to supervise Jackson sufficient to fully dispel the Court's concerns.  It is aggravating that Defendant used his prior residence as a distribution hub, and it is unclear how convenient or stable his newfound residence at either his father's or his girlfriend's home would be, though both were ready and willing to allow Jackson to reside with them.  Ultimately, despite Jackson's father's and girlfriend's credibility, apparent reliability, and genuine best intentions, the Court is not persuaded that they can adequately monitor and detect Jackson's illicit activity.  They were apparently unaware of Jackson's drug trafficking conduct over the last two years.  They were also unaware that he owned or possessed firearms.  And, despite a year of outpatient treatment for an unknown substance in 2009, admitted prior opioid addiction, and regular fentanyl use (as well as occasional use of other substances), Jackson's family seemed unaware, per the whole of their testimony, of any substance use in Jackson's life.  Their lack of knowledge of these parts of Jackson's life casts at least some doubt on their abilities to dependably perceive any violations of the law or other conditions.

Relatedly, without more conclusive information about the dimension of Defendant's present fentanyl use (*e.g.*, whether it is tied to pain alone or is part of a broader, more serious substance use issue), it is difficult to appropriately craft conditions that will promote his sobriety and mitigate any danger risk.  Though the Court can impose a drug testing requirement, without drug treatment or other possible restrictions or conditions, the Court is not persuaded that testing alone adequately assuages the danger concerns associated with the overlapping substance use

and distribution issues in this case.  Defendant's fentanyl use and the unpredictability it begets ultimately further weakens an already precarious foundation of available conditions.

Accordingly, and given the considerable danger risk here at issue, the Court finds that the United States has shown by clear and convincing evidence that no combination of the available conditions can reasonably assure the safety of others and of the community.  Detention based on risk of danger is thus required under the BRA.

## III.    CONCLUSION

For the reasons thoroughly stated, the Court finds that the United States has not justified nonappearance-based detention, but it has shown that detention is warranted under the BRA on danger grounds.  The Court thus **GRANTS** the United States' oral detention motion.  As the BRA requires in this case, Jackson must remain in custody pending trial.  The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 3rd day of January, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge